# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE MISSION ESSENTIAL GROUP, LLC,<br><br>Defendant. | Case No. 2:23-cv-03365-SDM-EPD<br><br>District Judge Sarah D. Morrison<br><br>Magistrate Judge Elizabeth Preston Deavers<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY, WITH MEMORANDUM IN SUPPORT** |

Now comes Plaintiff, by undersigned counsel, and hereby moves the Court for leave to proceed pseudonymously in this matter, subject to the requirement that he disclose his identity privately to Defendant once it has appeared in this action.

Should the Court determine that further factual information would be necessary for it to consider granting this Motion, Plaintiff requests leave to provide any such further information that the Court may require, insofar as it would tend to identify him personally, by filing under seal.

Plaintiff's Memorandum in support of this Motion is attached hereto.

DATED: October 12, 2023

Respectfully submitted,

*/s/  Terence R. Coates*
Terence R. Coates (0085579) – Trial Attorney
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

Samuel J. Strauss *
sam@turkestrauss.com
Raina C. Borrelli *
raina@turkestrauss.com

**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, WI 53703
Telephone (608) 237-1775
Facsimile: (608) 509-4423

*Attorneys for Plaintiff and the Proposed Class*

*\* Motions for admission* pro hac vice *forthcoming*

**MEMORANDUM IN SUPPORT**

I.     **STATEMENT OF THE CASE AND FACTS**

On October 11, 2023, Plaintiff filed a proposed class action Complaint, alleging that Defendant The Mission Essential Group, LLC ("MEG"), his former employer, had lost control over its computer network, and the highly sensitive private information stored on it, in a data breach perpetrated by cybercriminals. Compl., ¶ 1. Defendant was informed of this breach by federal law enforcement authorities. *Id.*, ¶ 2. On July 25, 2023, Plaintiff received notice of the breach from Defendant, informing him that his private information may have been included in the breach, including his name and social security number. *Id.*, ¶¶ 3, 13, and Ex. A at 1. Because this breach consisted of data belonging to current and former employees of MEG, implicitly it would also reveal Plaintiff's status as such.

MEG is a contractor to the U.S. Government, and supplies translation and interpreting services to the U.S. defense and intelligence communities, specializing in providing "difficult-to-find language experts in the Middle East, Africa, and Asia" that reveal "relevant intelligence about the activities, capabilities, plans, and intentions of potential threats, both home and abroad, to inform decisions on national security issues and events." *Id.*, ¶¶ 1, 18-19, citing MEG's website. Through these polyglot language experts, MEG helps "protect and defend [customers like the Department of Defense's] interests against terrorism [] and other hazards to global security." *Id.*, ¶ 19. Therefore, this is the type of work that anyone known to have worked for MEG will be understood to have undertaken, and indeed it is the type of work that Plaintiff has undertaken.

Plaintiff is exactly such a language expert, and he has placed his knowledge and skills in the service of this country, going back over twenty years to the period following the September 11 attacks, when he worked for the U.S. Government. It is in that capacity that he also worked for

MEG. *Id.*, ¶ 43. As someone who has worked directly in support of this country's fight against terrorism, he has a well-founded fear of becoming a target for attacks by those against whom he has worked, in the event that his identity should become known to them; the risk that exactly this may happen as a result of this data breach has caused Plaintiff enormous anxiety. *Id.*, ¶¶ 47, 49, 52-53.

It is therefore of great concern to Plaintiff that the effects of MEG's mishandling of his personal information be as limited and contained as possible, and in particular that there be no further breaches that would increase the likelihood of his information coming into the hands of terrorists. It is for this reason, in addition to others common to all data breach cases, that Plaintiff is pursuing a claim for injunctive relief to require MEG to cease its inadequate security practices. ¶¶ 141-142, 154.

However, Plaintiff cannot vindicate his rights and seek to protect himself and those in the same position against these serious risks to their personal safety, if he is forced to disclose his identity in connection with MEG publicly in these proceedings. To do so would be to create a permanent public record that he is a former employee of MEG, who provided language-related services to U.S. defense and counterterrorist personnel. That would exacerbate the precise grave risk to his safety which he is seeking to minimize by bringing this action. Accordingly, Plaintiff respectfully requests that the Court allow him to proceed pseudonymously, as the most efficient and effective way of safeguarding his right to physical safety, while balancing the public's interest in access to judicial records.

## II.     LEGAL STANDARD

Fed. R. Civ. P. 10(a) requires that, "The title of the complaint must name all the parties." Therefore, courts "start from the premise that proceeding pseudonymously [or anonymously] is

4

the exception rather than the rule." *Doe v. Franklin Cty., Ohio*, No. 2:13-CV-00503, 2013 WL 5311466, at *2 (S.D. Ohio Sept. 20, 2013).

However, a court may "excuse plaintiffs from identifying themselves" upon a finding that their "privacy interests substantially outweigh the presumption of open judicial proceedings." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004). This decision is within the discretion of the district court. *Id*.

In *Porter*, the Sixth Circuit enumerated several considerations that would determine how the court should exercise this discretion, derived from *Doe v. Stegall,* 653 F.2d 180, 185–86 (5th Cir. 1981), which "*include*: (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information 'of the utmost intimacy'; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children." *Porter*, 370 F.3d at 560 (emphasis added). A further consideration is whether any prejudice would be caused to the defendant in preparing its case for trial. *Id.* at 561.

### III.    ARGUMENT

The *Stegall* court explicitly disavows any "hard and fast formula for ascertaining whether a party may sue anonymously," and requiring instead a "balancing of considerations calling for maintenance of a party's privacy against the…presumption of openness in judicial proceedings." 653 F.2d at 186. The *Porter* court implicitly endorses this position in saying that the determinative considerations "include" the ones it enumerated. It does not purport to be an exhaustive list of factors that a court could legitimately take into account in the exercise of its sound discretion.

Nonetheless, these factors certainly represent a stating-point for the court's consideration, and so Plaintiff will address them first. The second is the only one that is applicable in this case.

5

"Information of the utmost intimacy" can clearly encompass a range of subjects, depending on the sense given to the word "intimacy" in this context, but it is general sense evidently refers to subjects of a very private nature.[1] In this case, Plaintiff's relationship to MEG as a former employee, and via MEG to the U.S. defense and intelligence community as a collaborator in its work against international terrorism, is exactly such a subject.

The simple truth is that, if this fact about Plaintiff becomes known publicly, such as by becoming part of the record of this Court to which the public has access, it will expose him to the risk of becoming a target for retaliation from terrorists and state actors hostile to this country. That risk may not be so great here in the United States as that suffered by those doing similar work to Plaintiff overseas, where hundreds of such people have been assassinated in recent years, but it is nonetheless very real.[2] For that reason, Plaintiff has always treated the nature of his work and the identity of his defense-related employers as absolutely private, secret information, as it is common knowledge that those who work in association with national security agencies routinely do.

This single factor, standing alone, should be sufficient for Plaintiff to be allowed to proceed pseudonymously. The risk of serious physical harm or even death that would be caused by the public disclosure of the information at issue in this case is clearly no less weighty than the disclosure of other "information of the utmost intimacy" that has been held sufficient to allow a

---

[1] *See* https://www.merriam-webster.com/dictionary/intimate (accessed Oct. 12, 2023): "intimate, adjective…of a very personal or private nature" (giving example of "intimate secrets", and etymology as from Latin word "intimus"). *See also* https://www.perseus.tufts.edu/hopper/text?doc=Perseus%3Atext%3A1999.04.0059%3Aentry%3Dintimus for meaning of "intimus" in Charlton T. Lewis & Charles Short, *A Latin Dictionary* (1879): "inmost, innermost, most secret, most profound, most intimate" (accessed Oct. 12, 2023).

[2] It is well known that translators and interpreters working with U.S. forces and intelligence agencies in such circumstances have frequently been the targets of reprisals, including assassination. For example, over 300 Afghan interpreters who had worked with U.S. forces and their relatives have been killed as a direct result of that work in their home country since 2001: https://www.npr.org/2021/08/16/1028016074/an-afghan-interpreter-for-the-u-s-army-is-trying-to-get-out-of-afghanistan (accessed Oct. 12, 2023). As recently as July 3 this year, one such man was shot and killed in Washington, D.C., though the motive for this seems so far not to have been established: https://apnews.com/article/murder-afghanistan-war-nasrat-refugee-us-military-a8615ffeeeb05a97e9fba0cc63d34e3d (accessed Oct. 12, 2023).

Plaintiff to withhold his identity from the public record in other cases.

In fact, the risk of "extensive harassment and perhaps even violent reprisals" was part of the *Stegall* court's basis for finding that the plaintiffs before it should have been allowed to proceed under fictitious names. 653 F.2d at 186. The court found that, by filing suit, the plaintiffs had made revelations about themselves (in that case, their personal beliefs and practices related to religion) that would invite opprobrium analogous to that associated with criminal behavior. *Id.* Whether or not these revelations are considered to be "of utmost intimacy", the court nonetheless found that the risk of violence resulting from them was of substantial weight in allowing plaintiffs to withhold their names in pursuing their case.

Likewise, Plaintiff in this case has made a revelation about himself in his Complaint that would clearly invite the opprobrium of extremely dangerous actors. The hatred caused by this revelation would not be on the part of a substantial segment of his local community here in the United States, as was true of the *Stegall* plaintiffs, whose community was presumably otherwise peaceable and law-abiding in most respects. Here, it would be on the part of hostile actors who habitually use violence of the most extreme kind in the furtherance of their ends. The fact that their representatives are currently fewer in number in Plaintiff's immediate vicinity than those who posed a threat in *Stegall* does not greatly lessen the risk to him over time.

A comparison with another type of harm that Courts have found sufficient to grant such a motion may be instructive. Two recent opinions from the Magistrate and District Judges in a case in this District discuss the situation of a plaintiff who was a victim of sexual assaults bringing an action against the perpetrator of those crimes. *Doe v. Mitchell*, No. 2:20-cv-00459, 2020 WL 6882601 (S.D. Ohio Nov. 24, 2020), *R. & R. adopted*, 2021 WL 2313436 (S.D. Ohio June 7, 2021). The Magistrate Judge's opinion notes that federal courts have "have recognized the privacy

7

interests of alleged sexual assault victims and have held that those privacy interests 'outweigh the presumption in favor of openness.'" *Mitchell*, 2020 WL 6882601, at *5 (collecting cases).

The general principle of protecting the identities of the victims of such crimes is well established, for a number of compelling reasons. This is best known in the context of criminal prosecutions, but the application of some aspects of its rationale to the context of civil litigation should be noted in this context. One of the cases cited in *Mitchell* states that "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Id.*, citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006). This same principle has been applied to anonymity in civil cases in this District: "[T]he public interest weighs in favor of allowing [the Jane Doe defendant] to proceed anonymously so that other victims will not be deterred from coming forward." *Id.*, citing *NMIC Ins. Co. v. Smith*, No. 2:18-cv-533, 2018 WL 7859755, at *2 (S.D. Ohio Oct. 24, 2018). In the latter case, the court found that there were "compelling reasons" to protect the plaintiff's privacy, and to "shield her from discrimination and harassment." *Id.*

Public policy, then, favors placing as few unnecessary obstacles as possible in the way of the victims of such appalling crimes seeking justice in the courts, both through the criminal prosecution of their attackers and through actions for civil recovery against them. It therefore allows exceptions to the normal rules requiring the public identification of complaining witnesses and civil plaintiffs. In this way, it seeks to minimize, as far as possible under the circumstances, the likelihood that victims will be deterred from seeking criminal or civil justice by the prospect of having their distress compounded by public disclosure and all its repellent potential consequences.

In the present case, public policy should by analogy favor the granting of Plaintiff's motion. First, it is clearly in the public interest that qualified people not be deterred from pursuing the type of work that Plaintiff has done in furtherance of U.S. national security, by the prospect of being required to disclose their identities publicly even at the obvious risk of harm. Second, when seeking to protect his identity from further wrongful disclosure by means of civil litigation, it would make absolutely no sense that his injury should be further compounded by requiring that his name be publicly disclosed in connection with this action. Indeed, it would vitiate the entire purpose of bringing this action in the first place.

Finally, Plaintiff's request is narrowly tailored. Allowing him to proceed under a pseudonym would be the most effective and efficient method for the Court to protect Plaintiff's identity from further disclosure, without prejudice to Defendant. *See Porter*, 370 F.3d at 561 (holding that order allowing plaintiff to proceed pseudonymously would not hinder defendant's trial preparation). Plaintiff will disclose his identity to Defendant once it has appeared in this action (and, of course, to the Court as required). This measure has been found sufficient to protect defendants from prejudice. *Mitchell*, 2020 WL 6882601, at *6. *See also Doe v. City of Detroit*, No. 18-cv-11295, 2018 WL 3434345, at *2-3 (E.D. Mich. July 17, 2018).

To the extent that the Court may decide that Plaintiff must supplement the factual record in order to allow for a proper consideration of his Motin, Plaintiff requests that he be allowed to file under seal any further information that would tend to identify him.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant him leave to proceed pseudonymously under the name in which he has filed his Complaint herein.

9

DATED: October 12, 2023 　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/   Terence R. Coates*
　　　　　　　　　　　　　　　　　　　　Terence R. Coates (0085579) – Trial Attorney
　　　　　　　　　　　　　　　　　　　　**MARKOVITS, STOCK & DEMARCO, LLC**
　　　　　　　　　　　　　　　　　　　　119 East Court Street, Suite 530
　　　　　　　　　　　　　　　　　　　　Cincinnati, OH 45202
　　　　　　　　　　　　　　　　　　　　Telephone: (513) 651-3700
　　　　　　　　　　　　　　　　　　　　Fax: (513) 665-0219
　　　　　　　　　　　　　　　　　　　　tcoates@msdlegal.com

　　　　　　　　　　　　　　　　　　　　Samuel J. Strauss *
　　　　　　　　　　　　　　　　　　　　sam@turkestrauss.com
　　　　　　　　　　　　　　　　　　　　Raina C. Borrelli *
　　　　　　　　　　　　　　　　　　　　raina@turkestrauss.com
　　　　　　　　　　　　　　　　　　　　**TURKE & STRAUSS LLP**
　　　　　　　　　　　　　　　　　　　　613 Williamson St., Suite 201
　　　　　　　　　　　　　　　　　　　　Madison, WI 53703
　　　　　　　　　　　　　　　　　　　　Telephone (608) 237-1775
　　　　　　　　　　　　　　　　　　　　Facsimile: (608) 509-4423

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff and the Proposed Class*

　　　　　　　　　　　　　　　　　　　　* *Motions for admission* pro hac vice *forthcoming*


## **CERTIFICATE OF SERVICE**

　　　I hereby certify that the foregoing was delivered to a process server on October 12, 2023, to be served upon Defendant by its Statutory Agent together with the Summons and Complaint herein, at the following address:

The Mission Essential Group, LLC
c/o C T Corporation System
4400 Easton Commons Way, Suite 125
Columbus, OH 43219

Return of said service will be filed with the Clerk in due course.

　　　　　　　　　　　　　　　　　　　　*/s/   Terence R. Coates*
　　　　　　　　　　　　　　　　　　　　Terence R. Coates (0085579) – Trial Attorney