## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, on behalf of himself and all, others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 2:23-cv-03365-SDM-EPD |
| v. | ) ) | JUDGE SARAH D. MORRISON |
| THE MISSION ESSENTIAL GROUP, LLC, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT THE MISSION ESSENTIAL GROUP, LLC'S
## COMBINED 12(B)(1) AND 12(B)(6) MOTION TO DISMISS

Defendant, The Mission Essential Group, LLC ("MEG"), by and through counsel, moves the Court to dismiss Plaintiff John Doe's ("Plaintiff") Class Action Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons set forth in the attached Memorandum in Support, MEG respectfully requests that the Court grants its motion and dismiss Plaintiff's claims against MEG in their entirety, with prejudice.

Respectfully submitted this 22nd day of November, 2023.

/s/ Kip Bollin
Kip T. Bollin (0065275)
Steven G. Stransky (0082923)
THOMPSON HINE LLP
3900 Key Center,
127 Public Square
Cleveland, OH 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Kip.Bollin@ThompsonHine.com

Steve.Stransky@ThompsonHine.com

Jennifer A. Adler (Admitted *Pro Hac Vice*)
THOMPSON HINE LLP
Two Alliance Center
3560 Lenox Road NE
Suite 1600
Atlanta GA 30326
Telephone: (404) 541-2900
Fax: (404) 541-2905
Jennifer.Adler@ThompsonHine.com

*Counsel for Defendant The Mission Essential Group, LLC*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2023, I filed this document through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing.

*/s/ Kip Bollin*
Kip T. Bollin

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, on behalf of himself and all, others similarly situated, | ) ) | |
| | ) | CASE NO. 2:23-cv-03365-SDM-EPD |
| Plaintiff, | ) ) | |
| | ) | JUDGE SARAH D. MORRISON |
| v. | ) ) | |
| THE MISSION ESSENTIAL GROUP, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT THE MISSION ESSENTIAL GROUP, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS COMBINED MOTION TO DISMISS**

Kip T. Bollin (0065275)
Steven G. Stransky (0082923)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
*Kip.Bollin@ThompsonHine.com*
*Steve.Stransky@ThompsonHine.com*

Jennifer A. Adler (Admitted *Pro Hac Vice*)
THOMPSON HINE LLP
Two Alliance Center
3560 Lenox Road NE
Suite 1600
Atlanta, Georgia 30326
Telephone: (404) 541-2900
Facsimile: (404) 541-2905
*Jennifer.Adler@ThompsonHine.com*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

RELEVANT ALLEGATIONS....................................................................................... 3

ARGUMENT AND CITATION TO AUTHORITY....................................................... 4

   I.    PLAINTIFF LACKS STANDING TO BRING HIS CLAIMS........................... 4

Plaintiff has failed to establish standing under Article III.

      **A.**   The *Galaria* Decision and the Evolving Standards for Standing in the Sixth Circuit in the Data Breach Context ......................................................................................... 5

The hypothetical risk of future harm, without more, does not qualify as a concrete harm sufficient to establish standing. *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190 (2021)

      B.   Plaintiff's Alleged Risk of Future Identity Theft or Unauthorized Use of Plaintiff's Personal Information Fails to Establish a Concrete Injury-In-Fact After *TransUnion.* ................. 8

Plaintiff does *not* allege that this risk has materialized and there has been any actual misuse of his information, nor does Plaintiff plausibly allege an imminent threat of harm. *See, Tate v. EyeMed Vision Care, LLC,* Case No. 1:21-cv-36, 2023 U.S. Dist. LEXIS 175840 (S.D. Ohio Sept. 29, 2023)

      C.   Plaintiff's Alleged Risk of Future Identity Theft or Unauthorized Use of Plaintiff's Personal Information Fails to Establish a Concrete Injury-In-Fact Under *Galaria*..................... 10

To find a of a substantial risk of harm in this case under the *Galaria* standard, the court must: (i) ignore Plaintiff's own Complaint that describes the independent and comprehensive investigation by a cybersecurity expert; (ii) assume that a third-party cybercriminal targeted MEG for the PII it retained in its IT environment; (iii) assume this third-party selected and stole the Plaintiff's PII from millions of other records that MEG retained in its possession; (iv) assume the third party combined the stolen PII with PII it obtained from other sources to create a Fullz package applicable to the Plaintiff; and (v) assume the third party will imminently and successfully attempt to use that information to steal the Plaintiff's identity. *Galaria v. Nationwide Mut. Ins. Co.,* 663 F. App'x 384, 388 (6th Cir. 2016).

      D.   Plaintiff's Other Purported "Injuries" Also Fail to Establish Standing. ................ 12

A theoretical "diminution in value" of Plaintiff's PII is not a cognizable injury. Additionally, Plaintiff fails to allege that he intended to or attempted to sell his PII, or that if he had he would have been forced to accept a decreased price for the information. Similarly, a conclusory allegation of an alleged violation of Plaintiff's privacy rights is not a cognizable injury, nor is an alleged delay in notification of an alleged data breach. *Tate,* 2023 U.S. Dist.

LEXIS 175840 at *12; *Savidge v. Pharm-Save, Inc.,* 3:17-CV-00186-TBR, 2017 U.S. Dist. LEXIS 197635, *24 (W.D. Ky. Dec. 1, 2017).

Further, speculation that spam emails are a result of Plaintiff's PII being in the "hands of cybercriminals" is not a cognizable injury. The CAN-SPAM Act provides recipients of unwanted emails the right to unsubscribe from future communications -- however Plaintiff has not alleged that he exercised those rights. *See Blood v. Labette Cnty. Med. Ctr.,* Case no. 5:22-cv-04036-HLT-KGG, 2022 U.S. Dist. LEXIS 191922 (D. Kan. Oct. 20, 2022); 15 U.S.C §§ 7701-7713.

E.      Plaintiff's Alleged "Injuries" Are not Fairly Traceable to Any Conduct of MEG. 16

Even if Plaintiff plausibly alleged a breach occurred and that his PII was accessed, he fails to allege that any hypothetical future misuse would be fairly traceable to the alleged data breach or MEG. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

III.    PLAINTIFF ALSO FAILS TO STATE A CLAIM ON THE MERITS. ...................... 17

A.      Choice of Law. ...................................................................................... 17

Where diversity is the underlying basis for CAFA jurisdiction, the forum state's choice of law rules apply. *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 760 n.5 (6th Cir. 2008).

B.      Plaintiff Fails to State a Claim for Negligence. ..................................................... 18

Plaintiff has failed to allege any duty of care that MEG owed to him, and neither the Ohio Supreme Court nor the Sixth Circuit has found a general duty to protect a third-party's PII. In fact, several courts have expressly found that no such common law duty to safeguard PII exists. Plaintiff has also failed to adequately allege causation or resulting damage. Plaintiff does not even allege that he suffered identity theft -- only that he was alerted to a *potential* data breach and, as a result, experienced an increased risk in "identity theft." But Plaintiff does not allege that his PII was actually misused or that the alleged breach caused such misuse. *Galaria,* 2017 U.S. Dist. LEXIS 185166, *7; *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1326 (11th Cir. 2012).

Additionally, Plaintiff's negligence claim is barred by the Economic Loss Doctrine, as it is based on the same allegations of alleged wrongdoing and seeks the same damages as plaintiff's contract claims. *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 569 (6th Cir. 2006); O.R.C. § 1354.01 et seq.).

C.      Plaintiff Also Fails to State a Claim for Negligence *Per Se.* .................................. 23

Courts have uniformly held that a private right of action does not exist under section 5 of the FTCA. If a federal statute does not include a private right of action, Ohio law does not permit a plaintiff to use a violation of that statute as a basis for a negligence *per se* claim. Additionally, for the same reasons that Plaintiff's negligence claim is barred by the Economic Loss Doctrine,

so to is Plaintiff's negligence *per se* claim. *Morales v. Walker Motors Sales, Inc.*, 162 F.Supp. 2d 786, 790 (S.D. Ohio 2000).

D. Plaintiff Fails to State a Claim for Breach of Implied Contract. ........................... 24

Plaintiff fails to allege any conduct or representations by MEG – beyond what is stated in the Privacy Policy – that plausibly show that it intended to establish a contract with him, let alone what the terms of the alleged contract are. And the mere fact that Plaintiff provided MEG with his PII does not demonstrate that MEG agreed to guarantee the safety of his information. Even assuming Plaintiff plausibly alleges the existence of an implied contract, he fails to allege damages. *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.,* Civil Action No. 19-md-2904, 2021 U.S. Dist. LEXIS 240360, *68-69 (D.N.J. Dec. 16, 2021).

E. Because Plaintiff Fails to Allege the Existence of a Fiduciary Relationship Between Plaintiff and MEG, His Fiduciary Duty Claim Must be Dismissed. ............................ 27

Under Ohio law, an employer generally does not owe a fiduciary duty to his employee. Without a fiduciary relationship, it necessarily follows that there can be no breach of fiduciary duty. *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 823 (E.D. Ky. 2019).

F. Plaintiff Fails to Plausibly Allege that MEG Intentionally Intruded Upon His Seclusion ........................................................................................................................ 28

Ohio law only permits liability for intrusion upon seclusion if a defendant "*intentionally* intrudes upon the 'solitude or seclusion' or the private affairs of another. *Moran v. Lewis,* 114 N.E.3d 1254, 1257 (Ohio Ct. App. [8th Dist.] 2018). However, Plaintiff fails to allege that MEG *intentionally* disclosed his PII (or that Plaintiff suffered any damages due to an alleged intrusion upon seclusion).

G. Simply Providing PII to an Employer Does Not Confer the Benefit Necessary to Maintain an Unjust Enrichment Claim ...................................................................... 30

Conferring PII For the purpose of employment does not constitute unjust enrichment. *Teeter v. Easterseals-Goodwill N. Rocky Mt., Inc.*, CV-22-96-GF-BMM, 2023 U.S. Dist. LEXIS 35347, at *16 (D. Mont. Mar. 2, 2023)

CONCLUSION ............................................................................................................ 31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.G. v. Cmty. Ins. Co.,*
  363 F.Supp. 3d 834 (S.D. Ohio 2019)..................................................................... 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................... 10, 27

*ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.,*
  402 F.3d 700 (6th Cir. 2005)................................................................................ 35

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................... 10, 27

*Bell v. United States,*
  4 F.Supp. 3d 908 (S.D. Ohio 2014)...................................................................... 10

*Blood v. Labette Cnty. Med. Ctr.,*
  No. 5:22-cv-04036-HLT-KGG, 2022 U.S. Dist. LEXIS 191922 (D. Kan. Oct. 20, 2022) ...... 20

*Brickman v. Maximus, Inc.,*
  No. 2:21-CV-3822, 2022 U.S. Dist. LEXIS 205627 (S.D. Ohio May 2, 2022) ............... 13, 31

*Buchholz v. Tanick,*
  946 F.3d 855 (6th Cir. 2020)................................................................................ 15

*Carrier Corp. v. Outokumpu Oyj,*
  673 F.3d 439 (6th Cir. 2012)................................................................................ 10

*CenTra, Inc. v. Estrin,*
  538 F.3d 402 (6th Cir. 2008)................................................................................ 36

*Chambliss v. Carefirst, Inc.,*
  189 F.Supp. 3d 564 (D. Md. 2016) ...................................................................... 19

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ..................................................................... 13, 15, 23

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.,*
  887 F.3d 803 (7th Cir. 2018)................................................................................ 26

*Consol. Rail Corp. v. Gottshall,*
  512 U.S. 532 (1994) ........................................................................................... 29

*Cooper v. Bonobos, Inc.,*
  No. 21-CV-854 (JMF), 2022 U.S. Dist. LEXIS 9469 (S.D.N.Y. Jan. 19, 2022).......... 15, 16, 19

*Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.,*
  835 N.E.2d 701 (Ohio 2005)................................................................................ 29

*Darrisaw v. Pennsylvania Higher Edn. Assistance Agency,*
  2016 U.S. Dist. LEXIS 178837 (S.D. Ga. Nov. 29, 2016) .................................... 30

*Dep't of Labor v. McConnell,*
  828 S.E.2d 352 (Ga. 2019).................................................................................. 26

*Deutsche Bank Nat'l Tr. Co. v. Buck,*
  No. 3:17cv833, 2019 U.S. Dist. LEXIS 54774 (E.D. Va. 2019) ............................ 26

*Duqum v. Scottrade, Inc.,*
  No. 4:15-CV-1537, 2016 U.S. Dist. LEXIS 89992 (E.D. Mo. July 12, 2016) ........................ 21

*Edwards v. Moore,*
  351 Ga. App. 147 (2019)...................................................................................... 28

*Floor Craft Floor Covering, Inc. v. Parma Community General Hosp. Ass'n,*

560 N.E.2d 206 (Ohio 1990) ............................................................................. 29

*Foster v. Health Recovers Servs.*,
   493 F.Supp. 2d 622 (S.D. Ohio 2020) .......................................................... 30

*Fouty v. Ohio Dep't of Youth Servs.*,
   855 N.E.2d 909 (Ohio Ct. App. [10th Dist.] 2006) ..................................... 28

*FTC v. Owens-Corning Fiberglas Corp.*,
   853 F.2d 458 (6th Cir. 1988) ........................................................................ 30

*Gaddy v. Long & Foster Cos.*,
   No. 21-2396, 2022 U.S. Dist. LEXIS 46657 (D.N.J. Mar. 15, 2022) ....................... 33

*Galaria v. Nationwide Mut. Ins. Co.*,
   663 F. App'x 384 (6th Cir. 2016) .......................................................... passim

*Galaria v. Nationwide Mut. Ins. Co.*,
   998 F.Supp. 2d 646 (S.D. Ohio 2014) .......................................................... 19

*GE v. Lowe's Home Ctrs., Inc.*,
   279 Ga. 77 (2005) ......................................................................................... 29

*Gracetech, Inc. v. Perez*,
   2012-Ohio-700 (Ohio Ct App [8th Dist.] 2012) ........................................ 36

*Grady Mem. Hosp. Corp. v. Hayes*,
   341 Ga. App. 455 (2017) .............................................................................. 32

*Griffey v. Magellan Health, Inc.*,
   562 F.Supp. 3d 34 (D. Ariz., 2021) ............................................................. 34

*Griffith v. MacAllister Rental, LLC*,
   173 N.E.3d 115 (Ohio Ct. App. [1st Dist.] 2021) ....................................... 24

*Helton v. Fifth Third Bank*,
   2022-Ohio-1023 (Ohio Ct. App. [1st Dist.] 2022) ..................................... 39

*Hirschvogel Inc. v. Allison Transmission, Inc.*,
   No. 2:17-CV-458, 2019 U.S. Dist. LEXIS 79434 (S.D. Ohio May 10, 2019) ......................... 24

*Hite v. Anderson*,
   284 Ga. App. 156 (2007) .............................................................................. 31

*Holmes v. Elephant Ins. Co.*,
   No. 22-487, 2023 U.S. Dist. LEXIS 110161 (E.D. Va. June 26, 2023) .................... 16

*Housh v. Peth*,
   133 N.E.2d 340 (Ohio 1956) ........................................................................ 37

*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*,
   No. 19-md-2904, 2021 U.S. Dist. LEXIS 240360 (D.N.J. Dec. 16, 2021) .................. 14, 33

*In re GE/CBPS Data Breach Litig.*,
   No. 20 Civ. 2903, 2021 U.S. Dist. LEXIS 146020 (S.D.N.Y. Aug. 4, 2021) ................ 31

*In re Practicefirst Data Breach Litig.*,
   No. 1:12-CV-00790, 2022 U.S. Dist. LEXIS 19272, (W.D.N.Y. Dec. 1, 2022) ........ 16, 21, 22

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   45 F.Supp. 3d 14 (D.D.C. 2014) .................................................................. 22

*In re Zappos.com, Inc.*,
   108 F.Supp. 3d 949 (D. Nev. 2015) ............................................................. 22

*Ingram v. Glavin*,
   2023-Ohio-1290 (Ohio Ct. App. [8th Dist.] 2023) ..................................... 36

*Lakota Loc. Sch. Dist. Bd. Of Edu. v. Brickner*,

671 N.E.2d 578 (Ohio Ct. App. [6th Dist.] 1996)....................................................... 33

*Legg v. Leaders Life Ins. Co.*,
574 F.Supp. 3d 985 (W.D. Okla. 2021) ........................................................... 13, 15

*Lochridge v. Quality Temp. Servs.*,
No. 22-cv-12086, 2023 U.S. Dist. LEXIS 113794 (E.D. Mich. June 30, 2023)...................... 19

*Longenecker-Wells v. Benecard Servs. Inc*,
658 F. App'x 659 (3d Cir. 2016) ........................................................................... 33

*Loudin v. Radiology & Imagine Servs., Inc.*,
924 N.E.2d 433 *aff'd* 948 N.E.2d 944 (Ohio Ct. App. [9th Dist.] 2009)................................ 28

*Lucas v. Costantini*,
469 N.E.3d 927 (Ohio Ct. App. [12th Dist.] 1983) ....................................................... 32

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........................................................................................... 11

*Lunsford v. Sterilite of Ohio, L.L.C.*,
165 N.E.3d 245 (Ohio 2020)................................................................................. 37

*Martin v. Ledbetter*,
342 Ga. App. 208 (2017)..................................................................................... 25

*McCombs v. Delta Grp. Elecs., Inc.*,
No. 1:22-cv-00662-MLG-KK, 2023 U.S. Dist. LEXIS 100632 (D.N.M. June 9, 2023).......... 21

*McKenzie v. Allconnect, Inc.*,
369 F. Supp. 3d 810 (E.D. Ky. 2019) ..................................................................... 36

*Middleton v. Hollbrook*,
2016-Ohio-3387, 2016 Ohio App. LEXIS 2253 (Ohio Ct. App. [3d Dist.] June 13, 2016)..... 31

*Morales v. Walker Motors Sales, Inc.*,
162 F.Supp. 2d 786 (S.D. Ohio 2000)..................................................................... 30

*Moran v. Lewis*,
114 N.E.3d 1254 (Ohio Ct. App. [8th Dist.] 2018)....................................................... 37

*Newman v. Total Quality Logistics, LLC*,
No. 1:20cv173, 2021 U.S. Dist. LEXIS 60651 (S.D. Ohio Mar. 30, 2021)...................... 29, 32

*Norton v. Beasley*,
No. 21-6053, 2022 U.S. App. LEXIS 33286 (6th Cir. Dec. 1, 2022) .................................. 14

*Padula v. Wagner*,
37 N.E.3d 799 (Ohio Ct. App. [9th Dist.] 2015).......................................................... 39

*Parm v. Nat'l Bank of Cal., N.A.*,
242 F. Supp. 1321 (N.D. Ga. 2017) ....................................................................... 39

*Paugh v. Hanks*,
451 N.E.2d 759 (Ohio 1983)................................................................................. 28

*Pavlovich v. Nat'l City Bank*,
435 F.3d 560 (6th Cir. 2006)................................................................................. 29

*Purvis v. Aveanna Healthcare, LLC*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021) ............................................................... 35, 36

*Randleman v. Fid. Nat. Title Ins. Co.*,
465 F. Supp. 2d 812 (N.D. Ohio 2006)..................................................................... 32

*Raze Int'l, Inc. v. Southeastern Equip. Co.*,
69 N.E.3d 1274 (Ohio Ct. App 2016) ..................................................................... 34

*Reilly v. Ceridian Corp.*,

    664 F.3d 38 (3d Cir. 2011) ............................................................................ 12, 24

*Remijas v. Neiman Marcus Group, LLC,*
    794 F.3d 688 (7th Cir. 2015) ................................................................................. 22

*Resnick v. AvMed, Inc.,*
    693 F.3d 1317 (11th Cir. 2012) ............................................................................. 27

*Riger v. Giant Eagle, Inc.,*
    138 N.E.3d 1121 (Ohio 2019) ............................................................................... 25

*Rodrick v. Danieli Corp.*,
    2006 U.S. Dist. LEXIS 111543 (July 12, 2006) .................................................... 35

*Savedoff v. Access Group, Inc.,*
    524 F.3d 754 (6th Cir. 2008) ................................................................................. 24

*Savidge v. Pharm-Save, Inc.,*
    No. 3:17-CV-00186-TBR, 2017 U.S. Dist. LEXIS 197635 (W.D. Ky. Dec. 1, 2017)............ 22

*Schneider v. United States Enrichment Corp.,*
    No. 2:03-cv-01028, 2005 U.S. Dist. LEXIS 19878, (S.D. Ohio Sept. 13, 2005) ..................... 38

*Seaton v. TripAdvisor LLC,*
    728 F.3d 592 (6th Cir. 2013).................................................................................... 8

*Sheldon v. Kettering Health Network,*
    40 N.E. 661 (Ohio Ct. App. [2nd Dist.] Aug. 14, 2015) ................................... 31, 37

*Sifuentes v. Dave Inc.,*
    No. 1:23-cv-984, 2023 U.S. Dist. LEXIS 198557 (W.D. Mich. Nov. 6, 2023)................. 13, 23

*Simon v. Eastern Ky. Welfare Rights Organization,*
    426 U.S. 26 (1976) ................................................................................................. 23

*Simpson-Vlach v. Mich. Dept. of Educ.,*
    No. 22-1724, 2023 U.S. App. LEXIS 11543 (6th Cir. May 10, 2023) ................... 38

*Snyder v. United States,*
    590 Fed. Appx. 505 (6th Cir. 2014) ...................................................................... 29

*Spokeo v. Robins,*
    578 U.S. 330 (2016) ............................................................................................... 11

*Szurovy v. Olderman,*
    243 Ga. App. 449 (2000).......................................................................................... 28

*Tate v. EyeMed Vision Care, LLC,*
    No. 1:21-cv-36, 2023 U.S. Dist. LEXIS 175840 (S.D. Ohio Sept. 29, 2023) ........ 11, 14, 21, 28

*Teeter v. Easterseals-Goodwill N. Rocky Mt., Inc.,*
    No. CV-22-96-GF-BMM, 2023 U.S. Dist. LEXIS 35347 (D. Mont. Mar. 2, 2023) ............... 40

*Toner v. Monro Muffler & Brake, Inc.,*
    2008-Ohio-3493, 2008 Ohio App. LEXIS 2943 (Ohio Ct. App. [2nd Dist.] July 11, 2008).... 38

*Tracy v. Elekta, Inc.,*
    No. 1:21-cv-02851-SDG, 2023 U.S. Dist. LEXIS 127338 (N.D. Ga. Mar. 31, 2021) ............. 31

*TransUnion LLC v. Ramirez,* 141 S.Ct. 2190 (2021) ............................................................. passim

*Tucker v. Marietta Area Health Care, Inc.,*
    No. 2:22-cv-184, 2023 U.S. Dist. LEXIS 13974 (S.D. Ohio Jan. 26, 2023) ........................... 29

*Vadaj v. French*,
    89 N.E.3d 73 (Ohio Ct. App. [8th Dist.] 2017)....................................................... 25

*Warth v. Seldin,*
    422 U.S. 490 (1975) ............................................................................................... 11

*Whitehead v. Grant & Weber, Inc.,*
   No. 22-CV-06517, 2022 U.S. Dist. LEXIS 241863 (E.D.N.Y. Dec. 30, 2022) ...................... 16
*Willey v. J.P. Morgan Chase, N.A.,*
   2009 U.S. Dist. LEXIS 57826 (S.D.N.Y. July 7, 2009)........................................................ 27
*Williams v. McMillian,*
   8th Dist. Cuyahoga No. 107570, 2019-Ohio-3275 ............................................................. 28
*Williams v. Toy,*
   2023-Ohio-1844, 2023 Ohio App. LEXIS 1852 (Ohio Ct. App. [5th Dist.] June 1, 2023)...... 29
*Zehentbauer Fam. Land LP v. Chesapeake Expl., LLC,*
   No. 4:15cv2449, 2016 U.S. Dist. LEXIS 93825 (N.D. Ohio July 19, 2016)......................... 33
*Zlotnick v. Equifax Info. Servs., LLC,*
   583 F. Supp. 3d 387 (E.D.N.Y. 2022).................................................................................. 16

**Statutes**

15 U.S.C §§ 7701-7713 ................................................................................................................ 20
15 U.S.C. § 45............................................................................................................................... 30
28 U.S.C. § 1332(d)(2) ................................................................................................................. 24
O.C.G.A. § 23-2-58....................................................................................................................... 35
Ohio Revised Code § 1349.192 .................................................................................................... 22
U.S. Const. Art. III, § 2................................................................................................................. 10

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................................ 10
Fed. R. Civ. P. 12(b)(6)................................................................................................................ 10

**Treatises**

Restatement of Law, 1st of Restitution, § 1 ................................................................................. 39
Restatement of Law, 2d Torts, § 652B ......................................................................................... 37

## <u>INTRODUCTION</u>

This lawsuit arises out of an alleged cybersecurity incident on Defendant The Mission Essential Group, LLC's ("MEG") computer system. In September 2022, MEG learned of a potential unauthorized access to its computer system, and in response, immediately hired an industry leading security specialist to independently investigate the matter. However, the security investigator did not identify a breach to MEG's cybersecurity program, and did not identify any unauthorized intrusion into, or any unauthorized activity occurring within, MEG's information technology ("IT") environment. Nonetheless, MEG notified its current and former employees in the United States of the potential incident for transparency purposes and out of an abundance of caution. Plaintiff claims that he is a former employee of MEG who received this data security incident notice sent by MEG on or about July 20, 2023.

Although proceeding anonymously, Plaintiff alleges that, as a condition of his employment, he provided his name and Social Security number and other personally identifiable information (collectively, "PII") to MEG, and that this information was part of the potential data breach. But Plaintiff does not claim that he has suffered any monetary losses, or that he has been the victim of identity theft as a result of the data breach. Instead, he speculates that his PII was accessed and/or stolen, and then further speculates that it may be used to harm him at some unspecified time in the future. Based upon these allegations, Plaintiff filed this putative nationwide class action, alleging six causes of action. Plaintiff's Complaint should be dismissed.

First, Plaintiff lacks Article III standing. On its face, Plaintiff's Complaint demonstrates that his sole basis for relief rests upon the risk of hypothetical harms that may materialize in the future and/or actions taken to prevent or prepare for such hypothetical future harms, rather than any tangible or actual harms. He fails to allege that any future harm is imminent or impending.

1

These allegations of injury – based on multiple levels of speculation – do not establish a concrete injury-in-fact required to establish standing under Article III of the United States Constitution. Moreover, any alleged "injuries" suffered by Plaintiff were caused by independent actions of unknown third parties and are therefore not "fairly traceable" to any conduct of MEG.

Second, Plaintiff fails to plausibly allege the elements of any of his claims. His negligence claim fails because the elements therein are not applicable to the facts at hand (e.g., no common law duty of care, no breach of any duty of care, and lack of causation) and it is additionally barred by the economic loss doctrine and Ohio's cybersecurity safe harbor statute. His negligence *per se* claim is similarly barred by the economic loss doctrine and also fails because courts have repeatedly recognized that such a claim cannot be based upon an alleged violation of the Federal Trade Commission Act. Plaintiff further alleges that he provided his PII to MEG as "a condition of employment," but fails to plausibly allege how MEG somehow assented to an "implied" contract or owed him a "fiduciary" duty to guarantee the safety of that information. Further, the only contractual-related terms that Plaintiff alleges may apply in this matter are MEG's data privacy related policies and procedures, and they expressly disclaim liability arising from a data security incident. Similarly, merely providing an employer PII as a condition of employment is an insufficient "benefit" to support a claim for unjust enrichment. And finally, Plaintiff does not plausibly allege that MEG took any action whatsoever to intentionally intrude upon his seclusion, a required element for such a claim.  Even assuming that MEG had knowledge of a risk of a data breach, such knowledge does not equal intent.

Third, Plaintiff fails to allege any cognizable damages as a matter of law. He has not suffered any monetary losses and his non-monetary damages – including potential "diminution in value" of his PII and emotional distress – are speculative and not recoverable as a matter of law.

Put short, Plaintiff's Complaint does nothing more than allege that a data breach *potentially* happened, and based on that alone, recites a host of potential harms that are identified in similar "form" complaints that Plaintiff's counsel has filed across the country. His allegations are insufficient as a matter of law to either establish standing or to state a claim on which relief can be granted, and the Complaint should be dismissed with prejudice.

## RELEVANT ALLEGATIONS

Plaintiff alleges that he is a former employee of MEG and that, as a condition of his employment, he was required to provide his PII to MEG for purposes of payroll. ECF No. 1, PageID 5, ¶ 26; PageID 8-9, ¶¶ 42, 44.  He alleges that on July 20, 2023, he received notice from MEG that cybercriminals "potentially gained unauthorized access" to his PII. (the "Notice"). The Notice was sent to MEG's current and former employees for transparency purposes and out of an abundance of caution and informed them that in September 2022, MEG learned of a "potential incident that *may* affect the privacy of some of your information." ECF No. 1, PageID 31-32 (emphasis added).[1] As background, in September 2022, MEG was notified by federal law enforcement officials of a potential data security incident impacting MEG's IT environment. In response, MEG immediately hired an industry leading cybersecurity specialist who conducted an investigation which concluded April 19, 2023. *Id.* After this comprehensive and independent investigation, "Mission Essential was unable to validate the reports from law enforcement and confirm unauthorized access to Mission Essential email accounts occurred." *Id.* Nonetheless,

---

[1]  Because the Notice is attached to and relied upon in Plaintiff's Complaint, it may be properly considered on this Motion to Dismiss. *Seaton v. TripAdvisor LLC,* 728 F.3d 592, 596 (6th Cir. 2013) (documents attached to the motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claims) (citations and internal quotation marks omitted). The same is true of MEG's website Privacy Policy relied upon by Plaintiff. ECF No. 1, PageID 5, ¶ 21. *See, A.G. v. Cmty. Ins. Co.,* 363 F.Supp. 3d 834, 839 n.2 (S.D. Ohio 2019). MEG's Privacy Policy: https://www.missionessential.com/privacy-policy-2/ (hereinafter, "Privacy Policy") (last visited November 18, 2023).

MEG provided notice of the *potential* incident to its current and former employees for transparency purposes and "out of an abundance of caution." *Id.* The Notice informed Plaintiff and the other recipients that MEG was "unaware of any actual or attempted misuse of your information." It informed of the steps MEG took in response to the potential incident and provided resources available to recipients to help them better protect their PII and encouraged Plaintiff and other recipients to "remain vigilant against incidents of identity theft and fraud." *Id.*

Plaintiff does not allege that any of his PII was actually sold, made available to the public or found anywhere on the "dark web" as a result of the potential incident. He does not allege that he has suffered any identity theft or any fraud whatsoever. Rather, Plaintiff alleges that he has suffered "injuries" in various forms, including: (1) "time and effort" monitoring his accounts to protect himself from identity theft (*See,* ECF No. 1, PageID 9, ¶¶ 48-49); (2) violation of his privacy rights (*Id.* at PageID 10, ¶ 50); (3) diminution in value of his PII (*Id.* at PageID 10, ¶ 51); (4) increased risk of identity theft and physical danger (*Id.* at PageID 10, ¶ 52); (5) an increase in "spam" emails (*Id.* at PageID 10, ¶ 53); (6) that he was "deprived" of the "earliest opportunity" to guard his PII due to an alleged delay in notification of the potential incident. (*Id.* at PageID 9, ¶ 46); and that he has suffered emotional distress over his financial security and personal safety. (*Id.* at PageID 9, ¶ 49). In his Complaint, despite no alleged facts supporting the claims, Plaintiff now seeks to represent a nationwide class of individuals whose PII was allegedly "accessed without authorization" as a result of the potential incident. ECF No. 1, PageID 16, ¶ 80.

## **ARGUMENT AND CITATION TO AUTHORITY**

## I.    **PLAINTIFF LACKS STANDING TO BRING HIS CLAIMS.**

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. Standing is a threshold question in every

federal case. *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2208 (2021). To establish standing under Article III, a plaintiff must show: "(1) that [he] suffered a concrete, particularized, and actual or imminent injury; (2) that the injury is traceable to the defendant's conduct; and (3) that a favorable ruling would redress that injury." *Tate v. EyeMed Vision Care, LLC,* Case No. 1:21-cv-36, 2023 U.S. Dist. LEXIS 175840 (S.D. Ohio Sept. 29, 2023) (citing, *TransUnion,* 141 S.Ct. at 2208); *see also, Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (noting that the injury-in-fact must be "actual or imminent, not 'conjectural' or 'hypothetical.'"). At the pleading stage, a plaintiff must "'clearly … allege facts demonstrating' each element" of standing. *Spokeo v. Robins,* 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin,* 422 U.S. 490, 518 (1975)). [2]

A. **The *Galaria* Decision and the Evolving Standards for Standing in the Sixth Circuit in the Data Breach Context.**

In 2016, the Sixth Circuit in *Galaria v. Nationwide Mut. Ins. Co.,* 663 F. App'x 384, 388 (6th Cir. 2016) (unpublished) considered what constitutes a "sufficient" injury-in-fact in a data breach case. In that case, hackers gained access to Nationwide's computer system and "stole the personal information of Plaintiffs and 1.1 million others." *Id.* at 386. After receiving a letter informing them of the breach, plaintiffs filed a class action complaint. They alleged that the breach created an "imminent, immediate and continuing increased risk" that they would be subjected to identity fraud. *Id.* They further alleged that they had suffered "financial and temporal" costs, including "purchasing credit reporting services, purchasing credit monitoring

---

[2]    Where, as here, a standing challenge under Rule 12(b)(1) is facial, it challenges the sufficiency of the pleadings and is construed under the "familiar 12(b)(6) standard." *Bell v. United States,* 4 F.Supp. 3d 908, 913 (S.D. Ohio 2014); *Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 439, 440 (6th Cir. 2012) (same). This standard requires Plaintiff to allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Where plaintiffs fail to allege facts that "nudge [ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

and/or internet monitoring services," in addition to "purchasing and reviewing credit reports." *Id.* at 386-87. Plaintiffs sought damages for "the increased risk of fraud, expenses incurred in mitigating risk, including the cost of credit freezes, insurance monitoring, and other mitigation products, and time spent on mitigation efforts." *Id.* The district court dismissed the complaints, finding that plaintiffs failed to allege a cognizable injury and therefore lacked Article III standing. Plaintiffs moved for reconsideration and sought leave to amend. In a proposed amended complaint, plaintiff Galaria alleged that he had learned that there had been three unauthorized attempts to open credit cards in his name, using his name, birthday, and Social Security number. *Id.* The district court denied reconsideration and denied leave to amend.

On appeal, the Sixth Circuit reversed, finding that an Article III injury-in-fact may be adequately pled based upon "allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs." *Id.* at 388. The court found that "[w]here a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints." *Id.* According to the court, while it may not be "literally certain" that their data would be misused, where Plaintiffs already knew that they have lost control of their data, there is a "sufficiently substantial risk of harm that incurring mitigation costs is reasonable." *Id.* The court specifically noted that plaintiffs alleged that they had already incurred "costs – namely, credit freezes – that Nationwide recommended but did not cover." *Id.* at 389. It concluded that these "costs are a concrete injury suffered to mitigate an imminent harm, and satisfy the injury requirement of Article III standing." *Id.*[3]

---

[3]    The Court noted that other courts had reached a "different conclusion." *Id.* at 398. Specifically, the Court cited *Reilly v. Ceridian Corp.,* 664 F.3d 38, 40, 44 (3d Cir. 2011), where the Third Circuit found that the alleged injuries were too speculative where it was unclear "whether the hacker read, copied, or understood" the defendant's data. The court held that there was no "identifiable taking" where "all that is known is that a firewall was penetrated" and that

*Galaria* was decided before the United States Supreme Court's decision in *TransUnion,* 141 S.Ct. at 2203. In *TransUnion*, plaintiffs brought a putative class action against TransUnion, alleging violations of the Fair Credit Reporting Act. While TransUnion possessed allegedly defamatory credit reports for all putative class members, it had only disclosed those reports for some of the class members. *Id.* at 2209-10. The class members whose reports were not disclosed alleged standing based upon the risk of future disclosure. The Court held that mere "hypothetical" risk of future harm, without more, did not qualify as a concrete harm sufficient to establish standing. *Id.* at 2211. A plaintiff must show that the risk of future harm caused a "separate concrete harm," such as if they were "independently harmed by their exposure to the risk itself." *Id.* And where a plaintiff alleges an "independent harm" resulting from the risk of future harm to establish standing, the future harm must be "certainly impending" and not speculative. *Id.* at 2211-2212. Otherwise, a plaintiff can "manufacture standing by choosing to make expenditures" or claim other harms "based on hypothetical harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013).

Since *TransUnion,* courts within the Sixth Circuit have called into question *Galaria*'s finding that a mere risk of future harm constitutes a cognizable injury for purposes of standing. *See Brickman v. Maximus, Inc.,* No. 2:21-CV-3822, 2022 U.S. Dist. LEXIS 205627 (S.D. Ohio May 2, 2022) ("[T]he recent Supreme Court case *TransUnion LLC v. Ramirez* casts some doubt on the continued viability of *Galaria* ... much of the language in *TransUnion* suggests that *Galaria's* finding of an injury-in-fact based on a risk of future harm caused by a data breach may no longer be valid."); *Sifuentes v. Dave Inc.,* Case No. 1:23-cv-984, 2023 U.S. Dist. LEXIS 198557, *8 (W.D. Mich. Nov. 6, 2023) ("[t]he subsequent decision of the Supreme Court in

---

injuries only exist "*if* the hacker read, copied, and understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully." *Id.* at 43-44.

*TransUnion* arguably reins in *Galaria's* holding."); *See also, Legg v. Leaders Life Ins. Co.,* 574 F.Supp. 3d 985, 993 (W.D. Okla. 2021) ("Given the holding in *Trans Union,* it is far from clear that any case finding a concrete injury merely based on an abstract risk of future identity theft following a data breach is still good law, at least with respect to a claim for damages.")

**B. Plaintiff's Alleged Risk of Future Identity Theft or Unauthorized Use of Plaintiff's Personal Information Fails to Establish a Concrete Injury-In-Fact After *TransUnion.***

Plaintiff alleges that he is at risk of future harm, including the potential for identity theft and fraud resulting from the creation of "Fullz" report packages and the potential for "physical harm." ECF No. 1, PageID 8, ¶ 38, PageID 10, ¶¶ 52-53.[4] Importantly, however, Plaintiff does *not* allege that this risk has materialized and there has been any actual misuse of his information, and the Complaint does *not* allege that a "Fullz" package regarding the Plaintiff (or any member of the potential Plaintiff class) has been compiled by any third party whatsoever. Rather, his Complaint *assumes* a malicious third-party actor obtained Plaintiff's PII and alleges the general risks of identity theft, if such access happened, and describes the ways in which the information *could* be misused. *See, e.g.,* ECF No. 1, PageID 12-13, ¶¶ 62-66. But as set forth above, the mere risk of hypothetical future harm is insufficient to confer standing *See Norton v. Beasley,* No. 21-6053, 2022 U.S. App. LEXIS 33286, *24-25 (6th Cir. Dec. 1, 2022) (noting that "the threatened injury must be more than possible – it must be '*certainly impending'*" and an "unsupported 'some day' allegation of possible injuries – that have yet to come to pass – is not enough to establish standing.") (emphasis in original); *Tate,* 2023 U.S. Dist. LEXIS 175840 at *12 (risk of future identity theft is insufficient to confer standing, citing *TransUnion*); *In re Am. Med.*

---

[4] According to the Plaintiff, "[c]yber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as 'Fullz' packages." ECF No. 1, PageID 13, ¶ 65.

*Collection Agency, Inc. Customer Data Sec. Breach Litig.,* No. 19-2904, 2021 U.S. Dist. LEXIS 240360, *46 (D.N.J. Dec. 16, 2021) (plaintiffs alleging risk of future harm lacked standing, noting that they "fail to account for … the Supreme Court's recent admonition [in *TransUnion*] that an unmaterialized risk of future of harm cannot confer standing in a claim for damages."); *Cooper v. Bonobos, Inc.,* 21-CV-854 (JMF), 2022 U.S. Dist. LEXIS 9469, *8 (S.D.N.Y. Jan. 19, 2022) (plaintiff could not establish standing based on increased risk of identity theft).

Even if the "independent harms" identified by Plaintiff – such as lost time, emotional distress, or preventative efforts – resulted from the risk of future harm, he does not plausibly allege an imminent or "certainly impending" threat of harm. While the risk of future harm can lead to a concrete injury if it "causes a separate concrete harm" this is only true where the risk of future harm is imminent and impending. *TransUnion,* 141 S.Ct. at 2211-12; *Legg,* 574 F.Supp. 3d at 994 ("while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury where there is no imminent threat of harm."). Here, there is no such imminent threat. The Notice states that no unauthorized access to any information, including Plaintiff's, was verified. ECF No. 1, PageID 31-32. It further states that there was no verification of any "actual or attempted misuse" of Plaintiff's information. *Id.* Plaintiff alleges that the breach occurred over a year ago but fails to allege any misuse of his information whatsoever or received any threats. *Id.* Any future risk of harm is therefore based solely on speculation, and plaintiff cannot "create an injury by taking precautionary measures against a speculative fear." *Buchholz v. Tanick,* 946 F.3d 855, 865 (6th Cir. 2020); *Clapper,* 568 U.S. at 416 (a "plaintiff cannot 'manufacture standing' simply by 'incur[ring] certain costs as a reasonable reaction to a risk of harm.'"); *Reilly,* 665 F.3d at 46 (alleged time and money to monitor accounts did not establish standing "because costs incurred

to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' which forms the basis for Appellants' claims."); *Bonobos,* 2022 U.S. Dist. LEXIS 9469, *15; *In re Practicefirst Data Breach Litig.,* 1:12-CV-00790 (JLS/MJR), 2022 U.S. Dist. LEXIS 19272, *18 (W.D.N.Y. Dec. 1, 2022) (no standing where plaintiffs fail to allege that any of the compromised data has been misused and **over a year passed since data breach** with no indication of identity theft). Because Plaintiff fails to plausibly allege that an alleged harm from the potential data breach incident is imminent, he cannot rely on other purported concrete harms to manufacture standing.

Similarly, as described in more detail below, Plaintiff's allegations of emotional distress are conclusory and fail to show a concrete harm, and a number of post-*TransUnion* cases have found that "bare assertions of emotional injury" like the allegations in Plaintiff's Complaint are insufficient under Article III. *See Holmes v. Elephant Ins. Co.,* No. 22-487, 2023 U.S. Dist. LEXIS 110161, at *13 (E.D. Va. June 26, 2023) ("Because the plaintiffs plead only 'bare assertion of emotional injury,' they have not pleaded an injury-in-fact."); *Whitehead v. Grant & Weber, Inc.,* No. 22-CV-06517 (JMA) (JMW), 2022 U.S. Dist. LEXIS 241863, at *5 (E.D.N.Y. Dec. 30, 2022) ("Conclusory allegations of injury and nebulous claims of emotional harm, like the ones found in Plaintiff's Complaints, are insufficient to confer standing."); *Zlotnick v. Equifax Info. Servs., LLC,* 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (conclusory allegations of mental and emotional pain do not confer standing).

### C.     Plaintiff's Alleged Risk of Future Identity Theft or Unauthorized Use of Plaintiff's Personal Information Fails to Establish a Concrete Injury-In-Fact Under *Galaria*.

Even under the now-questionable standards set forth in *Galaria,* Plaintiff fails to adequately allege standing based upon the increased risk of harm. *Galaria* involved a case

wherein "hackers breached the [defendant's] computer network … and stole [plaintiffs'] personal information." *Id*. at 385. The *Galaria* court found an injury-in-fact existed based on "allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs." 663 Fed. App'x at 388-389. Specifically, the *Galaria* court stated that "[w]here a data breach *targets* personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes" and that while it may not be "literally certain" that their data would be misused, where Plaintiffs already knew that they have lost control of their data, there is a "sufficiently substantial risk of harm that incurring mitigation costs is reasonable." *Id* at 388 (emphasis added).

The targeted and intentional "hack-and-grab" type of cyberattack at issue in *Galaria* is significantly different from the facts in this case. As noted above, when MEG received notice of a potential security incident impacting its IT environment, it retained a leading IT cybersecurity specialist to investigate the matter who could not identify any breach of MEG's cybersecurity controls by a malicious third party or that such a third party stole any PII from MEG's custody and control. ECF No. 1, PageID 31-32. Further, MEG provided notice of the potential security incident for transparency purposes, and out of an abundance of caution, and not because of a significant risk that its employees or business partners would be subject to identity theft. *Id*. Accordingly, to find a of a substantial risk of harm in this case under the *Galaria* standard, the court must: (i) ignore Plaintiff's own Complaint that references the Notice therein describing the conclusions reached during an independent and comprehensive investigation conducted by an industry leading cybersecurity; (ii) assume that a third-party cybercriminal targeted MEG for the PII it retained in its IT environment; (iii) assume this third-party selected and stole the Plaintiff's PII from millions of other records that MEG retained in its possession; (iv) assume the third

party combined the stolen PII with PII it obtained from other sources to create a *Fullz* package applicable to the Plaintiff; and (v) assume the third party will imminently and successfully attempt to use that information to steal the Plaintiff's identity. Such a chain of unsubstantiated assumptions, in combination with the facts at hand in this case (which are inapposite to the facts in *Galaria*) results in the Plaintiff failing to meet even *Galaria's* risk of harm standard.

Moreover, Plaintiff fails to plausibly allege he has incurred any actual costs whatsoever, which is another reason he cannot satisfy *Galaria's* risk of harm standard. The Complaint mentions purported monetary losses in a "catch all" paragraph listing all of the *potential* harms he "and the proposed Class" may have suffered. EFC No. 1, PageID 12, ¶ 60. Notably, however the allegations in the Complaint relating to **Plaintiff's Experience** are devoid of any costs incurred by Plaintiff. ECF No. 1, PageID 8-9, ¶¶ 42-54. Plaintiff fails to allege any "monetary" or "out-of-pocket" costs he suffered, that he actually missed any work to incur lost "wages" or that he actually incurred any "costs" from unspecified "lost opportunities."

### D.      Plaintiff's Other Purported "Injuries" Also Fail to Establish Standing.

#### 1.      A Theoretical "Diminution in Value" of Plaintiff's PII Is Not a Cognizable Injury.

Plaintiff alleges that he has suffered "actual injury" due to alleged "diminution in the value of his PII." ECF No. 1, PageID 10, ¶ 51. But Plaintiff fails to allege that he intended to or attempted to sell his PII, or that if he had he would have been forced to accept a decreased price for the information. Mere speculation that the information decreased in value is insufficient to constitute an actual injury. *See Tate,* 2023 U.S. Dist. LEXIS 175840 at *12 (allegation that the PII at issue had "intrinsic" value and they were allegedly "deprived" of the opportunity to capitalize on it was implausible where plaintiff did not allege that he planned to sell his PII.); *Chambliss v. Carefirst, Inc.,* 189 F.Supp. 3d 564, 572 (D. Md. 2016) (same); *Lochridge v.*

12

*Quality Temp. Servs.,* Case No. 22-cv-12086, 2023 U.S. Dist. LEXIS 113794, *13 n. 2 (E.D. Mich. June 30, 2023) (absent allegations that plaintiff planned to sell information, alleged decrease in value of information does not "suffice as an independent injury in fact …").

### 2.     Speculation that Spam Emails Are a Result of Plaintiff's PII Being in the "Hands of Cybercriminals" Is not a Cognizable Injury.

Plaintiff also alleges that he was injured because following the alleged data breach, he received an unspecified number of emails from an unknown Gmail account with alleged fraudulent job offers and "crypto currency links" that he speculates "appear to be of Russian origin." (ECF No. 1 at PageID 10, ¶ 53). He goes on to speculate that these emails "suggest" that his PII is in the hands of "cybercriminals, hostile government actors and terrorists."[5] *Id.* These far-flung allegations are based on pure conjecture and do not constitute an actual or imminent injury. Even assuming that Plaintiff's PII was accessed or compromised – which is itself highly speculative – Plaintiff fails to allege that his email address was included in the information accessed. Without access to his emails through the alleged data breach, any spam email he received is necessarily insufficient to confer standing.[6] *See Blood v. Labette Cnty. Med. Ctr.,* Case no. 5:22-cv-04036-HLT-KGG, 2022 U.S. Dist. LEXIS 191922 (D. Kan. Oct. 20, 2022) (no injury-in-fact due to alleged spam absent allegation that phone numbers or emails were stolen.)

---

[5] Plaintiff alleges, without any reasoning, that his receipt of email communications concerning employment opportunities and cryptocurrency are somehow linked to "cybercriminals," "hostile government actors," and "terrorists," and he ignores the possibility they could have been transmitted from talent management agencies, recruiters, and financial investors. His allegations of malicious connections between the emails he received and the sender of the same are conclusory and do not relate to any actual harm.

[6] Indeed, Plaintiff acknowledges elsewhere in his Complaint that his email address was not accessed when he alleges that the "stolen" PII could be combined with information that was not stolen – such as phone number and emails – to create purported "Fullz" packages. ECF No. 1, PageID 13, ¶ 66.

In addition, federal law **protects** the rights of individuals and organization to transmit certain types of unsolicited commercial email communications, like those received by Plaintiff. *See* Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (codified, as amended, at 15 U.S.C §§ 7701-7713) (the CAN-SPAM Act); *see also* Federal Trade Commission, "Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act)" available at www.ftc.gov/legal-library/browse/statutes/controlling-assault-non-solicited-pornography-marketing-act-2003-can-spam-act (noting that CAN-SPAM Act creates requirements for those who *send unsolicited commercial email*) (emphasis added).

Even assuming that emails were included in the allegedly accessed information, Plaintiff fails to allege any facts supporting his implausible allegations. He does not, because he cannot, allege that these purported spam emails were the result of the potential data breach incident. He also does not, and cannot allege, that generally receiving unsolicited commercial email communications is, by itself, a "harm." Accordingly, this does not constitute an injury-in-fact for the purposes of standing. *See Cooper,* 2022 U.S. Dist. LEXIS 9469 at *4 (no injury-in-fact where plaintiff failed to demonstrate that spam texts, calls and emails were "fairly traceable" to the data breach); *McCombs v. Delta Grp. Elecs., Inc.,* 1:22-cv-00662-MLG-KK, 2023 U.S. Dist. LEXIS 100632, *18 (D.N.M. June 9, 2023) (allegations of increased spam communications after data breach insufficient to confer standing); *In re Practicefirst*, 2022 U.S. Dist. LEXIS 19272, *18 n.8 (listing cases where courts have found unsolicited spam insufficient to constitute injury-in-fact).

### 3. A Conclusory Allegation of an Alleged Violation of Plaintiff's Privacy Rights Is Not a Cognizable Injury.

Plaintiff also vaguely claims that he has suffered "actual injury" because the alleged "exposure" of his PII "violates his privacy rights." ECF No. 1, PageID 10, ¶ 50. Plaintiff does not allege that his PII was disclosed to the public at large or that he suffered any damages as a

result of such disclosure. This, too, is insufficient as a matter of law to provide standing. *Tate,* 2023 U.S. Dist. LEXIS 175840, *13 (alleged violation of privacy as a theory of "injury" is inadequate and has been rejected by the Supreme Court) (citing *TransUnion,* 141 S. Ct. at 2210)); *Duqum v. Scottrade, Inc.*, 4:15-CV-1537, 2016 U.S. Dist. LEXIS 89992, *30 (E.D. Mo. July 12, 2016) ("Courts have held that loss of privacy and breach of confidentiality are too abstract to establish Article III standing."); *In re Zappos.com, Inc.,* 108 F.Supp. 3d 949, 962 n.5 (D. Nev. 2015); *In re Practicefirst Data Breach Litig.,* 2022 U.S. Dist. LEXIS 19272, *25-26.

### 4. An Alleged Delay in Notifying of the Alleged Data Breach Is Not a Cognizable Injury.

Plaintiff next alleges that he has suffered injury because he was "deprived" of the earliest opportunity to guard his PII due to an alleged "delay" in notification of the alleged data breach. ECF No. 1, PageID 9, ¶¶ 46, 69. But Plaintiff fails to allege what injuries, if any, he has suffered due to the alleged "delay" in notification of the potential data breach and fails to allege any facts supporting this purported injury. His conclusory allegation does not plausibly allege a cognizable injury based on a delay in notification. *See Savidge v. Pharm-Save, Inc.,* 3:17-CV-00186-TBR, 2017 U.S. Dist. LEXIS 197635, *24 (W.D. Ky. Dec. 1, 2017) ("[M]ere allegation of harm, without accompanying factual allegations, is insufficient to warrant an inference that the alleged delay in notifying Plaintiffs of the security breach caused them cognizable injury."); *Remijas v. Neiman Marcus Group, LLC,* 794 F.3d 688, 695 (7th Cir. 2015) (delay in notification of an alleged breach "is not a cognizable injury."); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.,* 45 F.Supp. 3d 14, 31 (D.D.C. 2014) (same); Ohio Revised Code § 1349.192 (precluding any private right of action pertaining to non-compliance with Ohio's personal data breach notification statute and vesting the state attorney general with the

"exclusive authority to bring a civil action … for appropriate relief … if it appears that … a person has failed or is failing to comply" with the statute).

> **E.**   **Plaintiff's Alleged "Injuries" Are not Fairly Traceable to Any Conduct of MEG.**

In order to have standing, Plaintiff must show more than just a concrete injury. He must also plausibly allege "a causal connection between the injury and the conduct complained of – the injury has to be 'fairly … traceable to the challenged action of the defendant, and not … the result of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41-42 (1976)). Here, Plaintiff fails to allege that any of his purported "injuries" were "fairly traceable" to the potential data breach or any alleged conduct of MEG. The Notice demonstrates that no unauthorized access or exfiltration of any of MEG's data was ever confirmed or verified. ECF No. 1, PageID 31-32. Plaintiff offers no allegations of fact to the contrary; rather, Plaintiff only *speculates* that unauthorized third parties stole information from MEG's computer network, *speculates* that his information was included in that stolen information and *speculates* that as a result he is at *imminent risk* of suffering the myriad of purported "injuries." But "a speculative theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper,* 586 U.S. at 410.

Even if Plaintiff plausibly alleges that a breach occurred and his PII was accessed, any hypothetical future misuse is not "fairly traceable" to the alleged data breach or MEG. Plaintiff claims that the PII allegedly accessed in the data breach can be "combined" with other sources to create "Fullz" packages, which can *then* be sold or used to commit fraud. ECF No. 1, PageID 8, ¶ 39, PageID 13, ¶¶ 64-66. This is not traceable to the alleged breach, but relies upon "speculation about the decisions of independent actors." *Clapper,* 568 U.S. at 414. In *Sifuentes,*

2023 U.S. Dist. LEXIS 198557, *8, the court found that the elements of injury-in-fact and traceability were lacking where the plaintiff alleged "the existence of a breach of Defendant's firewall and from that speculates a parade of horribles." Similarly, here, Plaintiff fails to allege that the "parade of horribles" is fairly traceable to any conduct of MEG. *See also, Reilly,* 664 F.3d at 44 (no standing where injuries only existed "*if* the hacker read, copied, and understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully.") Because Plaintiff lacks Article III standing, his Complaint should be dismissed.

## II.    PLAINTIFF ALSO FAILS TO STATE A CLAIM ON THE MERITS.

### A.    Choice of Law.

Plaintiff alleges jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). EFC No. 1, PageID 3-4, ¶ 15. Where diversity is the underlying basis for CAFA jurisdiction, the forum state's choice of law rules apply. *See Savedoff v. Access Group, Inc.,* 524 F.3d 754, 760 n.5 (6th Cir. 2008). The State of Ohio has adopted the Restatement (Second) of Conflicts "in its entirety" to govern a choice of law analysis in Ohio. *Griffith v. MacAllister Rental, LLC*, 173 N.E.3d 115, 118 (Ohio Ct. App. [1st Dist.] 2021). The applicable state law is generally determined by whether the claims alleged sound in tort or in contract, as different choice of law rules apply. *Galaria*, 2017 U.S. Dist. LEXIS 185166 (S.D. Ohio Aug. 16, 2017). However, where there is no material difference between the laws of two jurisdictions, "a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply." *Hirschvogel Inc. v. Allison Transmission, Inc.*, No. 2:17-CV-458, 2019 U.S. Dist. LEXIS 79434, *15 (S.D. Ohio May 10, 2019) (internal quotation marks and citations omitted). Plaintiff alleges he resides in Georgia ECF No. 1, PageID 3, ¶13, and Mission Essential is an Ohio limited liability company. *Id.* at ¶ 14. Thus, this matter potentially involves the law of

the States of Georgia and Ohio. But as set forth below, there is no material difference between the laws of Ohio and Georgia with respect to Plaintiff's claims, and therefore Ohio law applies.[7]

> ### B. **Plaintiff Fails to State a Claim for Negligence.**
>
> #### 1. **Plaintiff Fails to Plausibly Allege Duty, Causation, or Injury.**

To allege a claim for negligence under Ohio law, plaintiff must show that defendant owed plaintiff a duty, breached that duty, and the breach proximately caused plaintiff's damages. *Riger v. Giant Eagle, Inc.,* 138 N.E.3d 1121, 1125 (Ohio 2019). The absence of "any one of the elements necessary to maintain a negligence action renders a plaintiff's claim insufficient as a matter of law." *Vadaj v. French*, 89 N.E.3d 73, 77 (Ohio Ct. App. [8th Dist.] 2017).[8]

Plaintiff's negligence claim alleges that MEG failed to "adapt, implement, and maintain adequate security measures to safeguard [his] information and allowing unauthorized access to Plaintiff's and the Class's PII." ECF No. 1, PageID 19, ¶ 94. Plaintiff further claims that "but for" MEG's alleged breach of its duties, his PII would not have been accessed by unauthorized persons. *Id.* at ¶ 95. He claims that the injury and harm he suffered was "the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting [his] PII." *Id.* at PageID 20, ¶ 96. He claims that he suffered diminution in value of his PII, and "consequential out of pocket losses." *Id.* at ¶ 97. Plaintiff's claim fails to satisfy all four elements necessary to maintain a negligence action. (i.e., duty, breach, causation, and damages).

First, Plaintiff fails to adequately allege any duty of care that MEG owed to him. Specifically, neither the Ohio Supreme Court nor the Sixth Circuit has found a general duty to

---

[7]  This Motion only involves the claims of Mr. Doe, the named plaintiff, and not the claims of the putative class members.

[8]  Similarly, to allege a claim for negligence under Georgia law, plaintiff must show "(1) a legal duty; (2) a breach of this duty; (3) injury; and (4) a causal connection between the breach and the injury." *Martin v. Ledbetter,* 342 Ga. App. 208, 211 (2017).

protect a third-party's PII, and several courts have expressly found that no such common law duty to safeguard personal information exists. *See, e.g., Cmty. Bank of Trenton v. Schnuck Mkts., Inc.,* 887 F.3d 803, 817 (7th Cir. 2018) (rejecting common law duty to safeguard privacy of information under Illinois law); *Deutsche Bank Nat'l Tr. Co. v. Buck*, Civil Action No. 3:17cv833, 2019 U.S. Dist. LEXIS 54774, at *15 (E.D. Va. 2019) (same under Virginia law); *Dep't of Labor v. McConnell,* 828 S.E.2d 352, 358 (Ga. 2019) (same under Georgia law). Because neither Ohio Supreme Court nor the Sixth Circuit have recognized a general common law duty to safeguard another's personal data, this court should decline to impose one here.

Even assuming that MEG owed Plaintiff a duty with respect to how it safeguarded PII, Plaintiff has not alleged any well-pleaded facts to support a breach of this duty. Plaintiff offers a series of conclusory statements regarding MEG's failure to "adapt, implement, and maintain adequate security measures" to protect PII from unauthorized access. ECF No. 1, PageID 19, ¶ 94. These allegations are insufficient to show that MEG breached any duty to Plaintiff, and holding otherwise would create a strict liability standard with respect to information security. In other words, Plaintiff seeks to impose strict liability on MEG wherein the occurrence of any data security incident (or here, a potential data security incident) would by itself demonstrate a breach of the standard of care to safeguard PII. This is not the law, and Plaintiff's conclusory assertions are insufficient to satisfy the Defendant breached its duty of care. *See, e.g., Willey v. J.P. Morgan Chase, N.A.,* 2009 U.S. Dist. LEXIS 57826, at *10 (S.D.N.Y. July 7, 2009) (pleading that the "[d]efendant deliberately and/or recklessly did not maintain reasonable procedures designed to protect against unauthorized access" was threadbare and conclusory).

Third, Plaintiff fails to adequately allege causation. The court in *Galaria,* 2017 U.S. Dist. LEXIS 185166, *7, expressly addressed the element of causation on a negligence claim under

Ohio law. In that case, the plaintiff alleged that a data breach occurred, and fifteen months later he learned of three instances of attempts to open credit cards in his name. *Id.* at *21. These allegations failed to allege causation "in a way that satisfied the pleading standards of *Twombly* and *Iqbal*" and alleged "nothing more than time and sequence." *Id.* In reaching its conclusion, the court relied, in part, upon the Eleventh Circuit's decision in *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1326 (11th Cir. 2012), in which the court held that to allege causation, a plaintiff must "include allegations of a nexus between [the data breach and identity theft] beyond allegations of time and sequence." Put another way, a plaintiff must allege more than a "mere temporal connection' but must allege a "logical connection between the two incidents." *Id.* at 1327.

Here, Plaintiff does not even allege that he suffered identity theft. He claims that in July 2023, he was alerted to a *potential* data breach in September 2022, and therefore experienced an increased risk in "identity theft" requiring him to spend time monitoring his accounts and credit reports "to ensure no fraudulent activity has occurred." ECF No. 1, PageID 9, ¶ 48. He fails to allege that his PII was misused or that the alleged data breach proximately caused any such misuse. He does not allege how the information allegedly disclosed could be used, on its own, to commit "identity theft" or fraud. These bare allegations do not show causation as a matter of law.

Finally, Plaintiff fails to allege that he has suffered any damages, and it is pure speculation as to whether he may suffer any such damages in the future due to the alleged breach. Under Ohio law, a plaintiff's damages cannot be speculative. *Williams v. McMillian*, 8th Dist. Cuyahoga No. 107570, 2019-Ohio-3275, ¶ 11.[9] A plaintiff is only entitled to damages for future losses if they are "reasonably certain." *See Fouty v. Ohio Dep't of Youth Servs.,* 855

---

[9]   Georgia law holds similarly. *See Szurovy v. Olderman,* 243 Ga. App. 449, 453 (2000); *Edwards v. Moore,* 351 Ga. App. 147, 151 (2019) ("[I]n the absence of showing of harm, there is no evidence that any alleged negligence was the proximate cause of damage to the plaintiff.")

N.E.2d 909, 918 (Ohio Ct. App. [10th Dist.] 2006). Plaintiff has not alleged any identity theft or that the "risk" of such theft in the future is "reasonably certain." He only speculates that, at some point in the future, unknown thieves might use the allegedly stolen information, in combination with other unspecified information to sell on the "dark web" or otherwise cause him damage. ECF No. 1, PageID 12-13, ¶¶ 61-66. This implausible scenario is legally insufficient.[10]

Plaintiff also cannot recover based upon allegations of alleged anxiety and fear. Plaintiff alleges that he has suffered "feelings of anxiety, sleep disruption, stress, fear and frustration." ECF No. 1, PageID 9, ¶ 49. In Ohio, a plaintiff can recover damages for negligent infliction of emotional distress where such distress is "severe and debilitating" or where plaintiff alleges a contemporaneous physical injury. *Loudin v. Radiology & Imagine Servs., Inc.,* 924 N.E.2d 433, 443, *aff'd* 948 N.E.2d 944 (Ohio Ct. App. [9th Dist.] 2009) (citing, *Paugh v. Hanks,* 451 N.E.3d 759 (Ohio 1983); *See also, Tate,* 2023 U.S. Dist. LEXIS 175840 at * 13 (emotional distress not sufficient injury-in-fact) (citing *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 546-49 (1994)). Plaintiff alleges neither and therefore a claim for emotional distress fails.[11]

### 2. Plaintiff's Negligence Claim Is Also Barred by the Economic Loss Doctrine and Ohio's Cybersecurity Safe Harbor Statute.

Under Ohio law, the economic loss doctrine "generally prevents recovery in tort of damages for purely economic loss." *Pavlovich v. Nat'l. City Bank,* 435 F.3d 560, 569 (6th Cir. 2006) (quoting *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 835

---

[10]  Plaintiff's allegation of "diminution in value" of his PII as a theory of damages fails for the same reason as it is an insufficient basis for an injury-in-fact for standing. (*See,* Section I, D. 1).

[11]  To the extent Plaintiff argues that he suffered damages due to fear from an increased risk of physical danger, his allegations are conclusory and implausible. To recover for psychological injuries based on exposure to physical danger, plaintiff must allege that he was "placed in immediate risk of physical harm." *Williams v. Toy,* 2023-Ohio-1844, 2023 Ohio App. LEXIS 1852, *11 (5th Dist. June 1, 2023); *Snyder v. United States,* 590 Fed. Appx. 505, 512 (6th Cir. 2014) (negligent infliction of emotional distress claim requires fear based on threat of "actual physical peril.") Plaintiff does not allege he is, or was ever, in *immediate* risk of physical harm.

N.E.3d 701, 704 (Ohio 2005); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-184, 2023 U.S. Dist. LEXIS 13974, at *9 (S.D. Ohio Jan. 26, 2023)).[12] But "[t]ort law is not designed … to compensate parties for losses suffered as a result of breach of duties assumed only by agreement. It remains the particular province of the law of contracts." *Floor Craft Floor Covering, Inc. v. Parma Community General Hosp. Ass'n*, 560 N.E.2d 206, 208 (Ohio 1990).

Where a plaintiff's tort and contract claims are based on the same allegations and seek the same damages, a negligence claim is barred by the economic loss doctrine. *See Newman v. Total Quality Logistics, LLC,* Case No. 1:20cv173, 2021 U.S. Dist. LEXIS 60651, *19 (S.D. Ohio Mar. 30, 2021) ("[E]ven if Defendant did have a duty to safeguard Plaintiff's information under Ohio law, Plaintiffs have not claimed any damages which Defendant's alleged negligence has caused *in addition* to any economic damages Plaintiffs seek to recover.") (emphasis in original); *Foster v. Health Recovers Servs.,* 493 F.Supp. 2d 622, 639 (S.D. Ohio 2020). Plaintiff's claims for negligence and breach of an alleged implied contract arise from the same alleged conduct and allege the same damages. Indeed, Plaintiff expressly alleges that the alleged breach of "implied" contract caused his injuries "(**as detailed *supra*** [in Plaintiff's negligence and negligence *per se* claims]") *See,* ECF No. 1, PageID 24, ¶ 122 (bold emphasis added). His negligence claim should be dismissed.

Ohio's Safe Harbor Statute similarly acts a bar to Plaintiff's negligence claim. O.R.C. § 1354.01 et seq. The Safe Harbor Statute provides that an entity with a written cybersecurity program that contains safeguards for the protection of personal information and that reasonably conforms to an industry recognized cybersecurity framework "is entitled to an affirmative

---

[12] The same is true under Georgia law. *See GE v. Lowe's Home Ctrs., Inc.,* 279 Ga. 77, 78 (2005) ("The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort.")

defense to any cause of action sounding in tort that is brought under the laws of this state or in the courts of this state and that alleges that the failure to implement reasonable information security controls resulted in a data breach concerning personal information." O.R.C. § 1354.01. MEG, therefore, has an affirmative defense negating Plaintiff's causes of action "sounding in tort," including his negligence claims.

### C. Plaintiff Also Fails to State a Claim for Negligence *Per Se.*

#### 1. Plaintiff Cannot Base a Claim for Negligence *Per Se* on an Alleged Breach of the FTCA.

Plaintiff's negligence *per se* claim is based upon alleged violations of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. He claims that MEG had a duty to "provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII" pursuant to Section 5 of the FTCA, that it breached that duty, and that such breach constitutes negligence *per se.* ECF No. 1, PageID 20, ¶¶ 99-105. However, "[c]ourts have uniformly held that a private right of action does not exist under section 5 of the FTCA." *Morales v. Walker Motors Sales, Inc.*, 162 F.Supp. 2d 786, 790 (S.D. Ohio 2000) (collecting cases); *see also FTC v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir. 1988) ("[Appellant] may not, as a private party, invoke the jurisdiction of the federal courts to enforce the [FTCA]."); *and see Darrisaw v. Pennsylvania Higher Edn. Assist. Agency*, 2016 U.S. Dist. LEXIS 178837, *5 (S.D. Ga. Nov. 29, 2016) (no private right of action under the FTCA).

If a federal statute does not include a private right of action, Ohio law does not permit a plaintiff to use a violation of that statute as a basis for a negligence *per se* claim. *Brickman v. Maximus, Inc.*, No. 2:21-cv-3822, 2022 U.S. Dist. LEXIS 205627, at *18 (S.D. Ohio May 2, 2022) (citing *Sheldon v. Kettering Health Network*, 40 N.E. 661, 674 (Ohio Ct. App. [2nd Dist.] Aug. 14, 2015) ("The violation of an administrative rule does not constitute negligence *per se*.")).

As the *Brickman* Court detailed, "in a negligence *per se* claim, the allegedly violated statute defines both the duty and the breach. So, when a plaintiff asserts a negligence *per se* claim, she is, essentially, suing for a violation of the statute. Thus, if a plaintiff uses a federal statute for which there is no private right of action as a basis for a negligence *per se* claim, she creates a private right of action where none had previously existed." *Id.* Accordingly, numerous courts in the data breach context have rejected claims for negligence *per se* based on an alleged violation of Section 5 of the FTCA. *Id.*, *see also In re GE/CBPS Data Breach Litig.,* No. 20 Civ. 2903, 2021 U.S. Dist. LEXIS 146020, *27-28 (S.D.N.Y. Aug. 4, 2021) (collecting cases). Plaintiff cannot maintain his claim for negligence *per se.*[13]

### 2. Plaintiff's Claim of Negligence *Per Se* Is Also Precluded by the Economic Loss Doctrine.

As with his negligence claim, Plaintiff's claim for negligence *per se* is barred by the economic loss doctrine, as it is premised upon the same factual allegations and alleged damages as his negligence claim, which are the same as his breach of contract claim. ECF No. 1, PageID 21-22, ¶¶ 103-108. *See, Newman,* 2021 U.S. Dist. LEXIS 60651 at *19-20.

### D. Plaintiff Fails to State a Claim for Breach of Implied Contract.[14]

Under Ohio law, a claim for breach of an implied contract has the same elements of an express contract claim: "offer, acceptance, consideration, and a meeting of the minds." *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 818 (N.D. Ohio 2006)

---

[13] MEG recognizes that Georgia has recognized a claim for negligence *per se* based upon an alleged statutory violation. *See Tracy v. Elekta, Inc*., Civil Action No. 1:21-cv-02851-SDG, 2023 U.S. Dist. LEXIS 127338, * 17 (N.D. Ga. Mar. 31, 2021). But assuming that Georgia law applied to Plaintiff's claims, under Georgia law, "negligence *per se* is not liability *per se*" and "when negligence *per se* is shown, the plaintiff must still prove proximate cause and actual damage to recover." *Hite v. Anderson,* 284 Ga. App. 156, 158 (2007) (citations omitted). The same is true under Ohio law. *See Middleton v. Hollbrook,* 2016-Ohio-3387, 2016 Ohio App. LEXIS 2253, *13 (Ohio Ct. App. June 13, 2016).

[14] Of note, Plaintiff has not brought a claim for breach of any express contract.

(internal citation omitted); *Lucas v. Costantini,* 469 N.E.2d 927, 929 (Ohio Ct. App. [12th Dist.] 1983) ("'Express' and 'implied' contracts are both contracts. To recover on either, the proponent must prove that an agreement, based on a meeting of the minds of the parties and on mutual assent, existed, to which the parties intended to be bound.") To survive a motion to dismiss for breach of an implied contract, a party must allege a "description of the conduct from which to infer a meeting of the minds." *Id.* (internal citation omitted).[15]

Plaintiff alleges that an "implied" contract existed between him and MEG because he was "required to provide [his] PII to MEG as a condition of receiving employment from Defendant." ECF No. 1, PageID 22, ¶ 110. He further alleges that, "[i]n turn, and through its internal policies, Defendant agreed to protect and not disclose [his] PII to unauthorized persons." *Id.* at ¶ 113; *See also,* ¶ 114 (alleging that MEG represented in its Privacy Policy that it had a duty to protect Plaintiff's PII). He claims that MEG breached this implied agreement by failing to "safeguard" his data, notify him promptly of the breach, comply with industry standards and failing to "ensure the confidentiality and integrity" of his PII. *Id.* at ¶ 120.[16]

Plaintiff fails to allege any conduct or representations by MEG – beyond what is stated in the Privacy Policy – that plausibly show that it intended to establish a contract with him, let alone what the terms of the alleged contract are. The mere fact that Plaintiff provided MEG with his PII does not demonstrate that MEG agreed to guarantee the safety of his information. *In re*

---

[15]  Similarly in Georgia, a claim for implied contract must set forth "a contract of such certainty and completeness that either party may have a right of action upon it" including facts that the parties assented to the terms of the alleged contract. *Grady Mem. Hosp. Corp. v. Hayes,* 341 Ga. App. 455, 457 (2017) (internal citation omitted).

[16]  Plaintiff also claims that MEG owed him an implied duty of good faith and fair dealing. ECF No. 1, PageID 23, ¶¶ 118, 121. But this implied covenant is not an independent cause of action. *Lakota Loc. Sch. Dist. Bd. Of Edu. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996). Thus, a claim for breach of contract subsumes a claim for breach of the duty of good faith and fair dealing. *Zehentbauer Fam. Land LP v. Chesapeake Expl., LLC,* No. 4:15cv2449, 2016 U.S. Dist. LEXIS 93825 (N.D. Ohio July 19, 2016).

*Am. Med. Collection Agency Customer Data Sec. Breach Litig.,* Civil Action No. 19-md-2904, 2021 U.S. Dist. LEXIS 240360, *68-69 (D.N.J. Dec. 16, 2021) (fact that defendant required plaintiff to provide personal information does not indicate mutual assent of an implied contract to secure the information); *Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 662 (3d Cir. 2016) (fact that the defendant "required Plaintiffs' personal information as a prerequisite to employment...alone did not create a contractual promise to safeguard that information, especially from third party hackers"); *Gaddy v. Long & Foster Cos.,* Civil No. 21-2396, 2022 U.S. Dist. LEXIS 46657, *26 (D.N.J. Mar. 15, 2022) (implied contract claim dismissed where plaintiffs failed to plausibly allege that defendants promised to protect against theft of information).

Plaintiff's reliance on the Privacy Policy to show mutual assent also fails. In *In re Am. Med. Collection Agency*, 2021 U.S. Dist. LEXIS 240360 (D.N.J. Dec. 16, 2021), the plaintiffs also attempted to rely on privacy notices and policies in which the defendants "promised" to safeguard their information. *Id.* at *72. In rejecting this argument, the court noted that the notices at issue expressly stated that defendants "did not ensure the privacy and safety of Plaintiffs' information." *Id.* The court found that "these statements made doubly clear that Defendants did not implicitly assent to a contract to protect Plaintiffs' Personal Information." *Id.*

MEG's Privacy Policy relied upon by Plaintiff and cited in his Complaint similarly states that MEG cannot and did not ensure the privacy and safety of Plaintiff's information:

> However, no information system can be fully secure, **so we cannot guarantee the absolute security of your personal information**. Moreover, we are not responsible for the security of information you transmit to Mission Essential over networks that we do not control, including the Internet and wireless networks, and **you provide us with any information and data at your own risk**. (Emphasis added).[17]

---

[17] Privacy Policy, *supra* n. 1.

This language makes it clear that MEG did not assent to a contract with Plaintiff to protect his PII. *See also, Griffey v. Magellan Health, Inc.,* 562 F.Supp. 3d 34, 51-52 (D. Ariz. 2021) (dismissing claim for breach of implied contract based on alleged "promise" on website to protect personal information) Plaintiff's unsubstantiated conclusions that an implied contract exists are insufficient as a matter of law to support his claim, and it should be dismissed.

Even assuming Plaintiff plausibly alleges the existence of an implied contract, he fails to allege damages. It goes without saying that a party seeking to recover damages for breach of contract must show damages to "a reasonable degree of certainty and in some manner other than mere speculation, conjecture, or surmise.") *Raze Int'l, Inc. v. Southeastern Equip. Co.,* 69 N.E.3d 1274, 1289 (Ohio Ct. App. 2016) (internal citation omitted). Plaintiff's speculative alleged injuries are the same as he claims he suffered in his negligence claim. ECF No. 1, PageID 24, ¶ 122. His damages fail for the same reason they fail on his negligence claim.

### E.   Because Plaintiff Fails to Allege the Existence of a Fiduciary Relationship Between Plaintiff and MEG, His Fiduciary Duty Claim Must be Dismissed.

Plaintiff alleges a claim for breach of an alleged fiduciary duty, claiming that a fiduciary relationship exists between him and MEG because MEG is his former employer. ECF No. 1, PageID 24-25, ¶¶ 123 – 129. He further claims that MEG became the "guardian" of his PII when he was employed, somehow giving rise to a fiduciary duty. *Id.* Under Ohio law, an employer generally does not owe a fiduciary duty to his employee. *Rodrick v. Danieli Corp.*, 2006 U.S. Dist. LEXIS 111543 (July 12, 2006) (citing R.C. 1339.03(B) (defining a fiduciary)). In *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 823 (E.D. Ky. 2019), the court found that, in the context of a data breach, no fiduciary relationship existed between Allconnect and its employees based solely upon the employment relationship. The same is true here – Plaintiff's former employee relationship with MEG is insufficient as a matter of law to establish the

existence of a fiduciary relationship.[18]  Without a fiduciary relationship, it necessarily follows that there can be no breach of fiduciary duty. *Gracetech, Inc. v. Perez*, 2012-Ohio-700, ¶ 11 (Ohio Ct App. [8th Dist.] 2012); *see also Purvis*, 563 F. Supp. 3d at 1382.

MEG's collection of certain personal information from Plaintiff as a condition of employment or maintenance of an internal Privacy Policy also fail to give rise to a fiduciary duty. *Ingram v. Glavin,* 2023-Ohio-1290, ¶ 70 (Ohio Ct. App. [8th Dist.] 2023) (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 411-412 (6th Cir. 2008)) (noting that a fiduciary duty does not arise from internal policies). The plaintiffs in *Purvis*, 563 F. Supp. 3d at 1383, alleged that they were required to provide personal information as a condition of employment, which gave rise to a "special relationship" between them and the defendant. In rejecting this argument, the court reasoned that the gathering of such information does not suggest that plaintiff was "relying upon or trusting [his] employer in unique or exceptional ways." *Id.* at 1384. The facts showed that the employee-employer relationship was nothing more than an "'arms-length' employment relationship" that did not give rise to a fiduciary duty. *Id.* Plaintiff's claim similarly fails because his relationship with MEG was nothing more than an "arms-length" employment relationship.

## F.    Plaintiff Fails to Plausibly Allege that MEG Intentionally Intruded Upon his Seclusion.

Under Ohio law, a defendant may be liable for intrusion upon seclusion if he "*intentionally* intrudes upon the 'solitude or seclusion' or the private affairs or concerns of another, and if such an intrusion would be highly offensive to a reasonable person. *Moran v.*

---

[18]    Once again, the same is true under Georgia law. *See,* O.C.G.A. § 23-2-58 ("A fiduciary duty exists "where on party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc."); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1384 (N.D. Ga. 2021).

*Lewis,* 114 N.E.3d 1254, 1257 (Ohio Ct. App. [8th Dist.] 2018) (citing, The Restatement of Law, 2d Torts, Section 652B (1977)) (emphasis added); *See also, Housh v. Peth,* 133 N.E.2d 340 (Ohio 1956). A claim for intrusion upon seclusion requires "proof of an *intentional intrusion upon the solitude or seclusion of another* or his private affairs or concerns." *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 677 (Ohio Ct. App. [2nd Dist.] 2015) (emphasis added); *see also, Lunsford v. Sterilite of Ohio, L.L.C.,* 165 N.E.3d 245, 253 (Ohio 2020). In *Sheldon,* the court found that, where plaintiffs alleged that the defendant negligently failed to protect their privacy, they failed to allege the intentional tort of intrusion upon seclusion. *Id.* Plaintiff similarly alleges that MEG was *negligent* in failing to take reasonable measures to protect his PII. *See, e.g.,* ECF No. 1, PageID 19, ¶¶ 94-95; PageID 21, ¶¶ 104, 108. But Plaintiff does not plausibly allege that MEG *intentionally* disclosed his PII.

Plaintiff's conclusory allegations that the "Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion," (ECF No. 1, PageID 25, ¶ 136) or that MEG acted with "a knowing state of mind" (*Id.* at PageID 26, ¶¶ 136-38) are legally insufficient. Plaintiff does not allege any *facts* that MEG took any intentional action whatsoever to cause criminals to access its computer network or any factual basis for MEG's purported "knowledge" that its security measures were inadequate. This Court is not required to accept Plaintiff's conclusory allegations as true. *Frazier,* 41 F. App'x at 764. And as a matter of law, alleged *knowledge* of a purported risk is not intent. *See Toner v. Monro Muffler & Brake, Inc.,* 2008-Ohio-3493, 2008 Ohio App. LEXIS 2943, *7 (Ohio Ct. App. [2nd Dist.] July 11, 2008) ("[T]he mere knowledge and appreciation of a risk – something short of substantial certainty – is not intent."); *see also, Schneider v. United States Enrichment Corp.,* Case No. 2:03-cv-01028, 2005 U.S. Dist. LEXIS 19878, *9 (S.D. Ohio Sept. 13, 2005) (same).

Plaintiff also fails to adequately allege that he has suffered any damages due to an alleged intrusion upon his seclusion. Indeed, his alleged damages are identical to those he claims to have suffered in his other claims. ECF No. 1, PageID 26, ¶ 140. For the reasons set forth above, his alleged damages are speculative, at best. The same is true of Plaintiff's allegations seeking unspecified injunctive relief. ECF No. 1, PageID 26, ¶¶ 141-43. To be entitled to injunctive relief, Plaintiff must allege that the risk of future harm is "sufficient imminent and substantial." *TransUnion,* 141 S.Ct. at 2210; *Simpson-Vlach v. Mich. Dept. of Educ.,* Case No. 22-1724, 2023 U.S. App. LEXIS 11543, *9 (6th Cir. May 10, 2023) (plaintiff seeking injunctive relief must allege a future injury that is "certainly impending" or presents a "substantial risk" of occurring). Plaintiff does not allege that he is at "substantial" risk for a second alleged cyberattack or any "certainly impending" future injury. He lacks standing to request injunctive relief.

### G. Simply Providing PII to an Employer Does Not Confer the Benefit Necessary to Maintain an Unjust Enrichment Claim.

To allege unjust enrichment under Ohio law, a plaintiff must show: (1) that he conferred a benefit upon the defendant; (2) the defendant knew about the benefit; and (3) it would be unjust for the defendant to retain the benefit without payment. *Padula v. Wagner*, 37 N.E.3d 799, 813 (Ohio Ct. App. [9th Dist.] 2015); *see also Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 1321, 1334 (N.D. Ga. 2017). A person is unjustly enriched where she or he "has and retains money or benefits which in justice and in equity belongs to another.*" Helton v. Fifth Third Bank*, 2022-Ohio-1023, ¶25 (Ohio Ct. App. [1st Dist.] 2022); *see also* Rest. 1st of Restitution, § 1.

Here, Plaintiff alleges that the "benefit" conferred on MEG was his PII. ECF No. 1, PageID 27, ¶ 146. He vaguely asserts that "Defendant benefitted from using [Plaintiff's] PII to facilitate its business" and that "Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII."

*Id.* at ¶¶ 146, 149. These allegations do not plausibly demonstrate that MEG benefitted in any way or derived value from Plaintiff's PII.

Plaintiff provided PII to Defendant for the purpose of obtaining employment – which Plaintiff received and was compensated for. Federal law requires Defendant to obtain Plaintiff's PII prior to employment. Immigration Reform and Control Act of 1986. Conferring PII for this purpose does not constitute unjust enrichment. *See Teeter v. Easterseals-Goodwill N. Rocky Mt., Inc.*, CV-22-96-GF-BMM, 2023 U.S. Dist. LEXIS 35347, at *16 (D. Mont. Mar. 2, 2023) (finding that the plaintiff's provision of her social security to her former employer did not constitute a benefit); *Gaddy*, 2022 U.S. Dist. LEXIS 466657, *34-35 (providing personal information as a condition of employment does not confer a benefit). Because Plaintiff fails to demonstrate any conferred benefit on MEG, his unjust enrichment claim fails.

## <u>CONCLUSION</u>

The allegations of Plaintiff's Complaint establish that he lacks Article III standing to bring this lawsuit, and that he fails to state a claim under each of his causes of action. For the reasons set forth above, Defendant The Mission Essential Group, LLC respectfully requests that this Court GRANT its Motion and dismiss Plaintiff's Complaint with prejudice.